IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT PATTON, JR., #143741, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:11-CV-1070-TMH |
| ) | [WO] |
| ) | |
| GARY HETZEL, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Robert Patton, Jr. ["Patton"], a state inmate currently incarcerated at the Easterling Correctional Facility ["Easterling"]. In this complaint, Patton challenges actions of correctional officials with respect to his continued confinement at Easterling. *Court Doc. No. 1* at 2-3. Patton names Gary Hetzel, the warden of Easterling, Kenneth Sconyer, Larry Anglin and Sherry Seal, correctional officials employed at Easterling, and Stephanie Atchison, a member of the correctional system's central classification team, as defendants in this cause of action. Patton seeks a declaratory judgment, injunctive relief and monetary damages. *Id*. at 4.

Upon review of the complaint, the court concludes that dismissal of this case prior

to service of process is appropriate under 28 U.S.C. § 1915(e)(2)(B)(i), (ii) and (iii).[1]

## II. DISCUSSION

### A. Facts

Patton and fifteen other inmates graduated from the crime bill program at Easterling on August 5, 2011. Of the graduating inmates, "only two remain at Easterling." *Court Doc. No. 1* at 3. Patton maintains he meets the eligibility criteria for transfer to a less restrictive facility and placement on work release but despite his requests the defendants refuse to "put [him] in for all that he is eligible for...." *Id*.

### B. Absolute Immunity

With respect to any claims Patton lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).

---

[1] The court granted Patton leave to proceed *in forma pauperis* in this cause of action (Doc. No. 3). Thus, the complaint is subject to screening under the provisions of 28 U.S.C. § 1915(e)(2)(B) which directs this court to dismiss the instant civil action prior to service of process if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### C. Due Process

Patton argues the defendants failure to transfer him from Easterling and their refusal to place him on work release deprive him of liberty interests protected by the Fourteenth Amendment to the United States Constitution. *Court Doc. No. 1* at 2.

The Due Process Clause provides that no state "shall deprive any person of life, liberty, or property without due process of law." The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S.

472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

A convicted prisoner has no constitutionally protected right to confinement in a particular correctional facility. *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (no liberty interest arising from Due Process Clause in obtaining transfer to less secure prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *see also Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution). Moreover, an inmate in the Alabama prison system has no

constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Although the plaintiff's confinement at Easterling may entail "more burdensome conditions" than that of a less secure facility this confinement is "'within the normal limits or range of custody which the conviction has authorized the State to impose.' *[Meachum,* 427 U.S. at 225]; *see also Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)." *Sandin*, 515 U.S. at 478. Consequently, the failure to transfer Patton to a correctional facility he deems more desirable does not rise to the level of a constitutional violation and such claim therefore provides no basis for relief in this 42 U.S.C. § 1983 action.

With respect to Patton's claim he is entitled to placement on work release, this claim is likewise without merit as the law is well settled that an inmate has no constitutionally protected interest in work release because the failure to place an inmate in this program does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484; *Kitchen v. Upshaw*, 286 F.3d 179, 188 (4th Cir. 2002) (inmate denied permission to participate in work release has no constitutionally protected interest in work release because "it is clear that being denied permission to leave jail in order to work is nothing more than an ordinary experience of inmates."); *Codd v. Brown*, 949 F.2d, 879 (6th Cir. 1991) (prisoners have no inherent due

process interest in work release); *see also Francis v. Fox*, 838 F.2d 1147 (11th Cir. 1988) (no liberty interest created by state laws or regulations which entitles an inmate to consideration for the work release program because the statutes and regulations establishing the program are framed in discretionary terms).

### D.  Equal Protection

Patton asserts the defendants transferred other inmates who completed the crime bill program from Easterling to less secure facilities while his requests for similar favorable treatment have been denied. *Court Doc. No. 1* at 3. To the extent this allegation can be construed to raise an equal protection claim, the claim is subject to summary dismissal.

In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... [An allegation] of ... discriminatory intent or purpose [related to a constitutionally protected interest] is required to [set forth] a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development*

6

*Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  In a case such as this one, where the plaintiff challenges actions of correctional officials, exceptionally clear proof of discrimination is required.  *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Moreover, mere differential treatment of similarly situated inmates, without more, fails to allege a violation of the Equal Protection Clause.  *E & T Realty Company v. Strickland*, 830 F.2d 1107 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988); *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987) (claims of mere disparity of treatment or even arbitrary administration of state power are insufficient to establish discrimination violative of equal protection).

     Patton utterly and completely fails to meet his pleading burden as he does not allege the defendants subjected him to adverse treatment based on some constitutionally impermissible reason; rather, he simply makes the conclusory assertion that differential treatment resulted in an equal protection violation.  Specifically, as the sole basis for his equal protection claim, Patton relies exclusively on the fact that he remains at Easterling while other inmates with similar treatment histories have been transferred to other,

presumably less secure, facilities.  The mere differential treatment referenced by Patton does not implicate a violation of the Equal Protection Clause.  *Sweet*, 467 F.3d at 1319; *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994).  Consequently, the equal protection claim insinuated by Patton is due to be dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii).

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that this case be dismissed with prejudice prior to service of process in accordance with the directives of 28 U.S.C. § 1915(e)(2)(B)(i), (ii) and (iii).

It is further

ORDERED that **on or before February 8, 2012**, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 25th day of January, 2012.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE